IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ISADORE DEE HARRIS,                    §
                                       §
        *Petitioner*,                  §
                                       §
v.                                     §        CIVIL ACTION NO. H-08-3414
                                       §
RICK THALER,                           §
                                       §
        *Respondent*.                  §

## MEMORANDUM OPINION AND ORDER

State inmate Isadore Dee Harris, proceeding *pro se*, filed this section 2254 habeas petition challenging his felony conviction for aggravated robbery with a deadly weapon. Respondent filed a motion for summary judgment (Docket Entry No. 14), to which petitioner filed a response (Docket Entry No. 16).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was found guilty of aggravated robbery with a deadly weapon in September 2003 and sentenced to eighteen years incarceration. The conviction was affirmed on direct appeal. *Harris v. State*, No. 01-03-01349-CR (Tex. App. – Houston [1st Dist.] 2005, pet.

ref'd).  The Texas Court of Criminal Appeals refused discretionary review, and denied petitioner's application for state habeas relief.  *Ex parte Harris*, Application No. 66,390-03.

Petitioner filed the instant petition on November 17, 2008, raising the following grounds for habeas relief:

(1)     insufficiency of the evidence;

(2)     trial court error in allowing the State to present a witness without adequate notice;

(3)     trial court error in denying a mistrial after sustaining an objection to extraneous office evidence during guilt/innocence; and

(4)     trial court error in denying his motion to suppress his identifications.

Respondent moves for summary judgment, and argues that petitioner's habeas claims are procedurally defaulted and/or without merit.

### *Factual Background*

The state court of appeals set forth the following statement of facts in its opinion:

On August 24, 2002, appellant entered a General Nutrition Center ('GNC') store at about 2:00 p.m.  Appellant discussed some products with the clerk, who then walked to the front of the store to ring up appellant's purchases.  As the clerk told appellant his total, appellant pointed a gun at him and demanded the money from the cash register and some of the store's products.  Appellant then led the clerk to the back of the store and instructed him to remain there until appellant was gone.  After appellant had left the store, the clerk activated the store's alarm.  Officer C.P. Campbell arrived between five and 10 minutes later.

When Officer Campbell arrived, the store clerk gave his description of the robber.  Officer Campbell also interviewed the manager of a store next door to GNC, who stated that he had noticed a suspicious man enter and leave

2

GNC.  The manager noted that the man had donned a sweatshirt and hat before entering GNC and that he later sped away in a silver Mitsubishi.  Officer Campbell broadcast the description of the robber and the getaway vehicle to police officers in the area.

Officer Pete Morales heard the broadcasted description of the robbery suspect and began looking for a person or vehicle matching the description.  Shortly thereafter, Officer Morales located a silver Mitsubishi matching the description of the getaway vehicle at an apartment complex.   While conducting surveillance on the vehicle, Office Morales noticed appellant and another man come down the stairs of the apartment building and get into a car parked next to the suspect vehicle.  Noting that appellant fit the description of the robbery suspect, Officer Morales took appellant into custody and drove him to the GNC where the robbery had occurred.  When appellant and the officer reached the GNC store, the store clerk and the manager of the store next door were given separate opportunities to identify appellant.  Both the store clerk at GNC and the manager of the store next door positively identified appellant as the robber.

After appellant was arrested, police officers took him back to his apartment complex, where he signed a consent to search his home.  During the search of appellant's home, officers found a trash can lid and some clothing.  The trash can lid fit a trash can located outside the door of the apartment.  Inside the trash can, officers found a handgun, nutritional supplements of the type sold at GNC, and a visor.

*Harris*, at *1.

### *The Applicable Legal Standards*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law

3

as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a different result from that precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(c)(1); *see also Miller-El*, 537 U.S. at 330-31.

4

### *Analysis*

#### *Procedurally Defaulted Claims*

In his first two habeas grounds, petitioner complains of insufficiency of the evidence and inadequate notice of a trial witness. Respondent argues that these two claims are procedurally defaulted and barred because petitioner failed to raise them on direct appeal.

In rejecting petitioner's claims on collateral review, the state habeas court found that these two claims were procedurally defaulted because they were not raised on direct appeal. *Ex parte Harris*, p. 49. The Texas Court of Criminal Appeals relied on this finding in denying habeas relief. A review of the record confirms that petitioner did not raise these claims on appeal. Accordingly, petitioner's complaints regarding the evidence and inadequate notice are procedurally defaulted and barred from consideration by this Court. *See Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) ("Texas law requires that a petitioner must raise a claim on direct appeal before it can be raised on state habeas, and this rule is an adequate state ground capable of barring federal habeas review.") (footnote, citations, internal quotation marks omitted). Petitioner shows neither good cause nor prejudice for his procedural default, or that failure to consider the issues will result in a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 729, 750 (1991).

These two issues are procedurally defaulted and cannot be considered by this Court. Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual

correctness with clear and convincing evidence.   Respondent is entitled to summary judgment dismissing these two claims.

*Denial of Mistrial*

During the guilt/innocence phase of trial, the State called police officer Morales to testify.  In answering one of the prosecutor's questions, the officer stated that an item of clothing found in petitioner's apartment "was used in possible other robbery (sic) in the area."  R.R., Vol. 4, p. 114.  The trial court sustained petitioner's objection to the statement and instructed the jury to disregard the statement.  *Id*.  Petitioner's ensuing motion for mistrial was denied.  *Id*.  Petitioner complains that the trial court erred in refusing to grant a mistrial.

In rejecting this argument on direct appeal, the state court of appeals found as follows:

In his first point of error, appellant contends that his state and federal constitutional rights were violated when the trial court denied his motion for mistrial based on a police officer's testimony regarding extraneous-offense evidence.

During trial, Officer Morales was called as a witness for the State.  During his testimony, the prosecutor asked Officer Morales questions regarding the search of appellant's apartment.  In response, Officer Morales described several items recovered from inside appellant's apartment.  When asked what additional items he had found, Officer Morales stated that he had found a hooded sweatshirt and added that the article of clothing 'was used in possible other robbery [sic] in the area.'  After defense counsel objected, the trial court sustained the objection and instructed the jury to disregard Officer Morales's statement.  However, the trial court denied defense counsel's request for a mistrial.

A trial court's denial of a motion for mistrial is reviewed under an abuse-of-discretion standard. It is well settled that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial court, unless it appears that the statement was so clearly calculated to inflame the minds of the jury and is of such damaging character as to suggest the impossibility of removing the harmful impression from the jury's mind. Except in extreme cases, an improper response is cured if a timely objection to the remark is sustained and the trial court instructs the jury to disregard.

Although improper, Officer Morales's testimony was not an extreme case incapable of cure by an instruction to disregard. Nothing in the record suggests that the prosecutor or the witness intended to inflame the minds of the jurors; nor was there anything to suggest that the brief reference to possible extraneous robberies was of such damaging character that it would be impossible to remove the harmful impression, if any, left on the jurors' minds.

Therefore, we conclude that the trial court's instruction to disregard cured any error resulting from the officer's testimony regarding the possible extraneous robberies. We overrule appellant's first point of error.

*Harris*, at *1-2 (citations, footnote omitted).

Trial court rulings such as the denial of a mistrial are matters of discretion and of state law, and are not subject to review by this Court. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (holding that it is not "the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). If an allegedly erroneous trial court ruling does not violate a specific federal constitutional right, a federal court may only grant habeas relief when the error would render the petitioner's trial fundamentally unfair. *Gochicoa v. Johnson*, 118 F.3d 440, 446

(5th Cir. 1997). This Court reviews the alleged trial court error under the harmless error standard set forth by the Supreme Court in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). Under the *Brecht* standard, the alleged trial court error must have had substantial and injurious effect or influence on the determination of the jury's verdict. *Id.*, at 637.

Under state law, a mistrial is appropriate when the objectionable event "is so inflammatory that a curative instruction is not likely to prevent a jury from being unfairly prejudiced against a defendant." *Thompson v. State*, 89 S.W.3d 843, 851 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd). Here, and as shown above, the state court of appeals expressly found that the trial court's immediate instruction to disregard cured any potential error regarding the officer's statement. Jurors are presumed to follow their instructions. *Zafiro v. United States*, 506 U.S. 534, 540 (1993). Petitioner presents no probative evidence rebutting this presumption, and none appears in the record. No harm or prejudice of a constitutional dimension is shown.

Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence. Respondent is entitled to summary judgment dismissing this claim.

### Denial of Motion to Suppress

In his fourth and final ground, petitioner complains that the trial court erred in denying his motion to suppress his impermissibly suggestive line-up and unreliable in-court

8

identification.  In rejecting this argument on direct appeal, the state court of appeals found as follows:

> In his second point of error, appellant contends that his state and federal constitutional rights were violated when the trial court denied his motion to suppress because he was subjected to an impermissibly suggestive lineup at the scene of the robbery that tainted appellant's in-court identification.

> To sustain a challenge to an in-court identification, a defendant must prove by clear and convincing evidence that the identification was tainted by improper pretrial identification procedures.  We apply a two-step analysis to determine the admissibility of an in-court identification.  First, we determine if the pretrial identification procedure was impermissibly suggestive.  Second, if the procedure was impermissibly suggestive, we determine whether there was a substantial likelihood of irreparable misidentification.  We will not reverse the trial court's decision unless a clear abuse of discretion is shown.

> Appellant contends that his identification at the scene of the robbery was improper because a criminal suspect cannot be subjected to such an identification in the absence of counsel.  Contrary to appellant's contention, the right to counsel does not attach until a prosecution has commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.   In the case at bar, prosecution had not commenced when appellant was subjected to identification at the scene of the robbery, and, thus appellant's right to counsel was not violated.

> Appellant also contends that he was subjected to an impermissibly suggestive lineup when he was brought back to the scene of the robbery alone and offered separately for identification by the two witnesses.  The test for determining whether a single show-up identification was unnecessarily suggestive and subject to irreparable misidentification is based on the totality of the circumstances.  *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972); *Stovall v. Denno*, 388 U.S. 293, 302 (1967). In reviewing the totality of the circumstances, appellate courts look to several factors, including (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the

witness at the confrontation; and (5) the length of time between the crime and confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

After appellant was driven back to the store where the robbery occurred, the GNC store clerk and the manager of the neighboring store were given separate opportunities to view appellant for identification. Neither witness was told that the suspect was in fact the robber he had seen previously. Although appellant was the only suspect present for identification, the identification took place shortly after the offense occurred, approximately one hour and 20 minutes after the robbery. The police were still combing the area attempting to locate the robber. Both the GNC store clerk and the manager had ample opportunity to view appellant during the robbery; the store clerk was face to face with the robber for five to 10 minutes, and the manager next door saw the robber entering and leaving the store. Furthermore, after the GNC store alarm sounded, the manager wrote down his observations of the man's height, weight, complexion, facial structure, clothing, and getaway vehicle, indicating a high degree of attention to the suspect. Both the store clerk and manager were positive that appellant was the man whom they had seen earlier during the robbery.

Under the totality of the circumstances, we cannot say that the trial court abused its discretion if it concluded that appellant's identification was not unnecessarily suggestive or subject to irreparable misidentification. Accordingly, we further hold that the trial court did not abuse its discretion in overruling appellant's motion to suppress.

*Harris*, at *2-4 (state citations omitted).

As properly stated by the court of appeals, an in-court identification may be successfully challenged by showing that the identification was tainted by improper pretrial identification procedures. *See Neil v. Biggers*, 409 U.S. 188, 189-99 (1972). The courts employ a two-step analysis to determine admissibility of identification evidence: "[W]e determine whether the identification procedure was impermissibly suggestive; if it was, we determine whether, under the totality of the circumstances, the suggestiveness led to a

10

substantial likelihood of irreparable misidentification." *United States v. Burbridge*, 252 F.3d 775, 780 (5th Cir. 2001).

A single person show-up identification, as was used in the instant case, does not, standing alone, violate due process. *Biggers*, 409 U.S. at 198. The test for determining whether a single person show-up identification was unnecessarily suggestive and subject to irreparable misidentification is based on "the totality of the circumstances." *Id*.; *Stovall v. Denno*, 388 U.S. 293, 302 (1967). The factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the assailant, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Biggers*, 409 U.S. at 199-200; *see also United States v. Fletcher*, 121 F.3d 187, 194 (5th Cir. 1997).

Here, the state court of appeals set out the facts it found salient to its review of the totality of the circumstances, and applied proper legal standards to those facts. Specifically, the court noted that the GNC store clerk and the manager of the adjacent store each separately viewed petitioner following the offense, and were not told that petitioner was the person they had previously seen. The identifications took place within one hour and twenty minutes of the robbery, and both witnesses had ample opportunity to view petitioner during the criminal offense. The GNC store clerk was face to face with his assailant for five to ten minutes, and the next-door store manager saw the assailant entering and leaving the GNC

11

store; in fact, the manager testified that it was the assailant's suspicious behavior prior to entering the GNC store that immediately drew his attention to him.  When the GNC store alarm subsequently sounded, the manager wrote down his observations of the assailant's height, weight, complexion, facial structure, clothing, and getaway vehicle, which the court of appeals found to indicate "a high degree of attention to the suspect."  The court of appeals noted that both witnesses were positive that petitioner was the person they had seen during the robbery.  The appellate court concluded that, under the totality of the circumstances, the trial court did not abuse its discretion in determining that petitioner's identification was not unnecessarily suggestive or subject to irreparable misidentification, and did not abuse its discretion in denying the motion to suppress.  *Harris*, at *4.

This Court's independent review of the record finds ample support for the state court's determination.  Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment dismissing this claim.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 14) is GRANTED.  The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on April 8, 2010.

_____
Gray H. Miller
United States District Judge